UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANSTAR FERMENT AG,<br><br>Petitioner,<br><br>v.<br><br>B&D NUTRITIONAL INGREDIENTS, INC.,<br><br>Respondent. | Case No.: 25-cv-2460-RSH-VET<br><br>**ORDER ON PETITION TO CONFIRM FOREIGN ARBITRATION AWARD**<br><br>[ECF No. 1] |

Before the Court is a petition filed by Danstar Ferment AG ("Danstar") to confirm a foreign arbitration award. ECF No. 1. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motion presented appropriate for resolution without oral argument. For the reasons below, the Court grants the petition.

## I. BACKGROUND

This action arises from an international arbitration award issued by the Swiss Arbitration Centre against respondent B&D Nutritional Ingredients, Inc. ("B&D").

### A. Distribution Agreement between Evolva and B&D

Petitioner Danstar is a Swiss company and the purported legal successor to Evolva SA ("Evolva"), a biotechnology company engaged in the research, development and

1

commercialization of active ingredients in health products, flavors and fragrances, and insect repellants. ECF No. 1 ¶¶ 1, 6. Respondent B&D is a California corporation engaged in the supply of products, including the ingredients used in dietary supplements, functional foods and beverages, and personal care products. *Id.* ¶¶ 2, 6.

On August 31, 2019, Evolva and B&D entered into an agreement for the distribution of Evolva's product, Veri-te trans-resveratrol (the "Distribution Agreement"). *Id.* ¶ 7. Under the agreement, B&D received exclusive distribution rights in the western United States and non-exclusive distribution rights in the eastern United States to Veri-te trans-resveratrol, subject to certain annual minimum purchase requirements. *Id.* ¶ 8. The Distribution Agreement contained an arbitration clause that provided that:

> [I]n the event of any dispute or difference or claim arising out of or in relation to this Agreement, including the construction, validity, performance, or breach thereof, shall be settled and decided by arbitration in accordance with the Swiss Rules of International Arbitration of the Swiss Chambers' Arbitration Institution in force on the date in which the Notice of Arbitration is submitted in accordance with these Rules and the award made in pursuance thereof shall be binding on the parties. The number of arbitrators shall be one. The place of arbitration shall be Zurich, Switzerland and the language of arbitration shall be English.

*Id.* ¶ 18. A dispute subsequently arose between the Parties regarding their respective obligations under the agreement. *Id.* ¶¶ 10–16.

**B.      Swiss Arbitration Proceedings**

On July 14, 2023, Evolva initiated arbitration proceedings against B&D before the Swiss Arbitration Centre pursuant to the Distribution Agreement. *Id.* ¶ 19. On February 17, 2025, the Swiss Arbitration Centre issued an order: (1) directing B&D to pay Danstar $568,650.86 USD "together with simple interest at the rate of 7%" from February 25, 2023 until payment; (2) fixing arbitration costs at 75,000 Swiss Francs ("CHF"); and (3) directing B&D to pay Danstar 18,750 CHF representing 50% of Danstar's share of the arbitration costs together with interest at the rate of 5% from the date of the award until

25-cv-2460-RSH-VET

payment. *Id.* ¶¶ 25, 27–28; ECF No. 13-2 at 85.

### C.    Enforcement Efforts

On April 8, 2025, Danstar filed an application with the High Court of Zurich for a declaration as to the enforceability of the arbitration award pursuant to Swiss law. ECF No. 1 at ¶ 32. This proceeding remains open. *Id.*; ECF Nos. 11 at 5–6; 15 at 3–4.

On September 18, 2025, Danstar filed the instant petition to confirm the international arbitration award issued by the Swiss Arbitration Centre against B&D in this Court. ECF No. 1 at 1. B&D filed a response. ECF No. 6. At the Court's direction, Danstar subsequently filed a supplemental brief and B&D filed a supplemental response. ECF Nos. 9, 11, 15.

## II.    LEGAL STANDARD

### A.    New York Convention

#### 1.    *Generally*

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), June 10, 1958, 21 U.S.T. 2517 governs "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." New York Convention, art. I(1); *see Castro v. Tri Marine Fish Co. LLC*, 921 F.3d 766, 773 (9th Cir. 2019). "The United States acceded to the New York Convention on September 30, 1970, and it entered into force in the United States on December 29, 1970." *CBF Industria de Gusa v. AMCI Holdings, Inc.*, 850 F.3d 58, 70 (2d Cir. 2017). "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

The United States has implemented its obligations under the New York Convention "in domestic law by way of the second chapter of the Federal Arbitration Act ('FAA')."

*China Nat'l Metal Prods. Imp./Export Co. v. Apex Dig., Inc.*, 379 F.3d 796, 799 (9th Cir. 2004). "Under 9 U.S.C. § 202, an arbitration award 'falls under the Convention' if it is one 'arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or [arbitration] agreement.'" *Al-Qarqani v. Chevron Corp.*, 8 F.4th 1018, 1024 (9th Cir. 2021).

### 2.    *Confirmation under the New York Convention*

Under the FAA, "[w]ithin three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207.

A court's "review of a foreign arbitration award is "quite circumscribed." *Ministry of Def. & Support v. Cubic Def. Sys.*, 665 F.3d 1091, 1103 (9th Cir. 2011). "Rather than review the merits of the underlying arbitration" a court reviews "only whether the party established a defense under the Convention." *China Nat'l*, 379 F.3d at 799. Under 9 U.S.C. § 207, a court "shall confirm" a foreign arbitration award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9 U.S.C. § 207. "The seven grounds for refusing to confirm an award are set out in Article V of the Convention." *Ministry*, 665 F.3d at 1096. Under Article V, confirmation may be denied upon a showing that:

> (a) The parties to the agreement … were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration,

provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

New York Convention, art. V(1)(a)-(e).

In addition, "[r]ecognition and enforcement of an arbitral award may also be refused if . . . [t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country" or "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." *Id.*, Art. V(2)(a)-(b). "These defenses are construed narrowly, and the party opposing recognition or enforcement bears the burden of establishing that a defense applies." *Ministry*, 665 F.3d at 1096. This burden is "substantial because the public policy in favor of international arbitration is strong[.]" *Polimaster Ltd. v. RAE Sys.*, 623 F.3d 832, 836 (9th Cir. 2010).

## III.   ANALYSIS

In its Response, B&D argues the Court should stay these proceedings pending resolution of the Danstar's enforcement action before the High Court of Zurich. ECF No. 6 at 1–2, 6–7. Alternatively, if the Court declines to impose a stay, B&D contends that Danstar's petition should be denied as: (1) Danstar failed to file duly certified copies of the arbitral award and the operative arbitration agreement as required by the New York Convention; (2) Danstar has not demonstrated that it is entitled to confirmation of the arbitral award because the arbitration was commenced by a "different" entity, Evolva; and (3) the Parties did not agree under the Distribution Agreement that a court judgment could

25-cv-2460-RSH-VET

be entered upon an arbitration award. *Id*. at 2, 7–13. The Court addresses each of these arguments, in turn, below.

### A.    Abstention/Stay

B&D first moves to stay this matter under the international abstention doctrine, arguing that Danstar has already filed an application seeking to enforce the same arbitral award before the High Court of Zurich, which remains pending. ECF No. 6 at 6–7. In response, Danstar argues that: (1) an enforcement application in another court is not one of the seven enumerated grounds for refusing to confirm an award set forth in Article V of the New York Convention; and (2) the High Court of Zurich has already ruled that the arbitration agreement is enforceable and the proceeding remains formally open only because Danstar has not yet been able to serve this decision on B&D. ECF Nos. 11 at 3–4, 5-6; 12-1, 12-2.

"The international abstention doctrine 'allows a court to stay or dismiss an action where parallel proceedings are pending in the court of a foreign nation.'" *Photothera, Inc. v. Oron*, No. 07CV490-MMA(AJB), 2009 WL 734282, at *7 (S.D. Cal. Mar. 19, 2009) (quoting *Supermicro Computer, Inc. v. Digitechnic, S.A.*, 145 F. Supp. 2d 1147, 1149 (N.D. Cal. 2001)). The doctrine "is rooted in concerns of international comity, judicial efficiency and fairness to litigants." *Supermicro*, 145 F. Supp. 2d at 1149. "Abstention doctrines are prudential doctrines and [a] court is not obligated under American statutory law to defer to foreign courts." *Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1134, 1155 (C.D. Cal. 2005) (quoting *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1237 n.13 (11th Cir. 2004)). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

Here, B&D has not demonstrated that this case presents extraordinary circumstances warranting abstention. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.").

25-cv-2460-RSH-VET

The Ninth Circuit's decision in *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193 (9th Cir. 1991) is instructive here. *Neuchatel* involved a commercial dispute arising from cargo lost during international transport. 925 F.2d at 1194. The district court stayed the case pending the outcome of parallel proceedings in Switzerland. *Id.* The Court of Appeals reversed, holding there were no "exceptional circumstances" as required under *Colorado River* to justify the district court's "refusal to exercise jurisdiction in deference to parallel proceedings in another jurisdiction." *Id.* In so doing, the Court of Appeals emphasized that the case involved an "unexceptional commercial dispute involving the owner of a lost cargo, the consignee of the cargo, the cargo's insurer, and the air carrier to whom the cargo was entrusted." *Id.* at 1195. In addition, the "mere  fact" that the parallel foreign proceedings may have been further along did not make the case "'exceptional' for the purpose of invoking the *Colorado River* exception to the general rule that federal courts must exercise their jurisdiction concurrently with courts of other jurisdictions." *Id.*

Similar to *Neuchatel*, the instant action involves a straightforward petition to confirm a foreign arbitral award stemming from an ordinary contractual dispute. ECF No. 1 ¶¶ 6–33. The *only* factor B&D identifies in support of abstention is the desire to avoid piecemeal litigation. ECF Nos. 6 at 6–7; 15 at 3–4. However, "[a] general preference for avoiding piecemeal litigation is insufficient to warrant abstention[.]" *Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017). "Any case in which *Colorado River* is implicated will inevitably involve the possibility of 'conflicting results, piecemeal litigation, and some duplication of judicial efforts,' which are the 'unavoidable price of preserving access to . . . federal relief.'" *Id.* at 842 (quoting *Neuchatel*, 925 F.2d at 1195). Nor does the fact that the Swiss enforcement action may arguably be further along render this case "exceptional." *See Neuchatel*, 925 F.2d at 1195.

For these reasons, the Court declines to stay this case under the international abstention doctrine.

///

///

25-cv-2460-RSH-VET

## B.    Certified Copies

B&D next argues the Court should dismiss this action because Danstar did not file certified copies of: (1) the August 31, 2019 Distribution Agreement between B&D and Evolva, or (2) the February 17, 2025 arbitral award from the Swiss Arbitration Centre until January 8, 2026—several months after initiating this suit. ECF No. 15 at 2–3. B&D further disputes that Danstar properly submitted certified copies of these documents. *Id.*

Under Article IV of the New York Convention, a petitioner applying for "recognition and enforcement" of a foreign arbitral award must submit, "at the time of the application": (1) a "duly authenticated original award or a duly certified copy"; and (2) "the original [agreement to arbitrate] or a duly certified copy thereof." New York Convention, art. IV(1).

Here, Danstar submitted a declaration from its counsel, Martin Molina, attesting to the authenticity of the Distribution Agreement. ECF No. 13-1 at 2 ¶¶ 4, 7. Danstar also provided a certificate issued by a Swiss notary authenticating the Swiss Arbitration Centre's arbitral award. ECF No. 13-2 at 86. The Court finds these submissions are sufficient to satisfy the requirements of Article IV of the New York Convention. *See, e.g., Ma v. Fang*, No. SACV 21-441 PSG (ADSX), 2022 WL 1078867, at \*4–5 (C.D. Cal. Mar. 2, 2022) (holding that declaration of petitioner's attorney was sufficient to authenticate original loan agreement and arbitral award); *Wong To Yick Wood Lock Ointment Ltd. v. Madison One Acme Inc.*, No. CV1407645SJOFFMX, 2015 WL 13919442, at \*5–6 (C.D. Cal. Apr. 21, 2015) (rejecting evidentiary challenge where arbitral award was certified by, among other individuals, a notary public); *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 5 F. Supp. 3d 25, 38 n.18 (D.D.C. 2013) (noting that courts "routinely confirm arbitral awards relying on documents sworn and certified by petitioner's counsel").

Notably, "[t]he purpose of Article IV's 'original ... or duly certified copy' requirement is to require the petitioner to prove that the relevant documents exist." *Gen. Marine II, LLC v. Kelly*, No. 3:21-CV-1425-W-DEB, 2022 WL 1459566, at \*6 (S.D. Cal. May 9, 2022) (quoting *Belize*, 5 F. Supp. 3d at 38). In this case, B&D does not meaningfully

25-cv-2460-RSH-VET

contest either the existence or authenticity of the documents submitted by Danstar. *See* ECF No. 15 at 2–3. Instead, B&D raises a technical challenge to the form of certification. *Id.* Courts have repeatedly rejected such challenges. *See e.g.*, *Belize*, 5 F. Supp. 3d at 38 (characterizing a similar argument as "'grasping at straws, attempting to persuade the Court to refuse to confirm the award on the basis of a mere technicality'") (quoting *Arb. between Overseas Cosmos, Inc. & NR Vessel Corp.*, No. 97 CIV. 5898 (DC), 1997 WL 757041, at *5 (S.D.N.Y. Dec. 8, 1997)); *see also Haas v. Winebow, Inc.*, No. 2:24-CV-10146-JLS-AJR, 2025 WL 2994553, at *4 (C.D. Cal. Mar. 20, 2025) (rejecting similar argument where respondent did not "meaningfully contest" the existence of either the arbitration award or arbitration agreement); *Gen. Marine II*, 2022 WL 1459566, at *5–6 (same); *Wong*, 2015 WL 13919442, at *6 (same).

Likewise, B&D has also not set forth any authority holding that a duly authenticated or certified copy of the arbitration agreement and arbitral award must be filed with the initial petition and cannot be filed later. "Indeed, district courts regularly consider petitions to confirm arbitration awards where such petitions have been amended." *Haas*, 2025 WL 2994553, at *3 (rejecting respondent's argument confirmation should be denied because petitioner failed to supply the court with an original or certified copy of arbitration agreement at the time of application).

Consistent with these above decisions, the Court rejects B&D's technical challenges.

### C.  Proper Parties

B&D additionally argues that Danstar is not entitled to confirmation of the Swiss Arbitration Centre's arbitral award because Danstar was not a party to the arbitration agreement between B&D and Evolva and has not adequately established that it is Evolva's legal successor. ECF No. 6 at 7–10.

The arbitral award itself reflects that this issue was at least considered if not resolved by the Swiss arbitrator. Although the claimant in the underlying arbitration proceedings was identified as Evolva, the award expressly notes that Evolva had been acquired by Danstar on April 22, 2024 and that Danstar was Evolva's legal successor. ECF No. 13-2 at

8. Consistent with that determination, the arbitrator ordered B&D to make payment to Danstar—*not* Evolva. *Id*. at 85. To the extent B&D seeks to relitigate this conclusion, B&D has not set forth how such a challenge falls within the narrow scope of the Court's review. *See Castro*, 921 F.3d at 773 ("Confirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm.") (quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007)); *Seung Woo Lee v. Imaging3, Inc.*, 283 F. App'x 490, 493 (9th Cir. 2008) ("Although [respondent] argues that the arbitration contract was between [respondent] and 'Medison Econet,' not 'Medison,' and that Medison breached its contract with [respondent], those issues were considered by the [foreign arbitration board] and are not subject to reconsideration here.").

## D. Agreement for Entry of Judgment

Finally, B&D contends the Court should deny Danstar's petition on the ground that the Parties did not mutually consent to the entry of a court judgment following arbitration. ECF No. 6 at 12–13. As B&D notes, this argument has been considered and rejected by Courts of Appeals. *See Phx. Aktiengesellschaft v. Ecoplas, Inc.*, 391 F.3d 433, 436 (2d Cir. 2004) ("Section 207 [of the New York Convention] does not in any way condition confirmation on express or implicit consent."); *McDermott Int'l v. Lloyds Underwriters of London*, 120 F.3d 583, 588–89 (5th Cir. 1997) (declining to apply consent to confirmation requirement to foreign arbitration agreement). Here, B&D does not identify any Article V ground for refusal based on the absence of consent, nor does it explain why the reasoning of the Second and Fifth Circuits should not apply. In the absence of contrary authority from the Ninth Circuit or a persuasive basis to depart from the Second and Fifth Circuits' reasoning, the Court declines to impose a consent to confirmation requirement in this case.

///

///

///

///

25-cv-2460-RSH-VET

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Danstar's petition. The Parties are **DIRECTED** to meet and confer and prepare a joint proposed judgment consistent with this Order within **fourteen days** of the issuance of this Order.

**IT IS SO ORDERED.**

Dated: February 27, 2026

_____
Hon. Robert S. Huie
United States District Judge

25-cv-2460-RSH-VET